UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| SOUTHCREEK DEVELOPMENT, LLC, ) | |
| ) | |
| Debtor, ) | Case No. 10-CV-2136 |
| ) | |
| VILLAGE OF MANTENO, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| vs. ) | |
| ) | |
| SOUTHCREEK DEVELOPMENT, LLC, ) | |
| GLEN R. BARMAN, as Trustee in ) | |
| Bankruptcy, and CENTRUE BANK, ) | |
| ) | |
| Appellees. ) | |

## OPINION

This is an appeal from an Order entered by the United States Bankruptcy Court for the Central District of Illinois, Judge Gerald D. Fines. For the following reasons, the decision of the bankruptcy court is REVERSED and remanded.

BACKGROUND

Overview

Appellant, Village of Manteno (the Village), Appellee South Creek Development, LLC (South Creek), and other parties entered into an annexation agreement (Original Annexation Agreement) in October 1996 which governed 314 acres of land at the southeast corner of I-57 and Manteno Road in unincorporated Kankakee County (Greater Property). The Original Annexation Agreement governed the way the Greater Property was to be zoned, developed, and

ultimately annexed into the corporate limits of the Village. Eventually the other parties (excluding the Village) transferred their right, title, and interest in the Greater Property to South Creek after the Original Annexation Agreement was executed. The Village and South Creek then executed an Amended Annexation Agreement in September 1997 after South Creek became sole owner of record for the Greater Property. This amended agreement was intended to clarify and settle, among other things, a dispute regarding South Creek's obligation to improve a portion of the Frontage Road that runs through the Greater Property (the Subject Property). The amended agreement partitioned the obligation to improve the Subject Property between the Village and South Creek.

In October 1996 the Village annexed, zoned, and subsequently permitted the subdivision and development of the Greater Property. In 2009, the Village filed suit against South Creek seeking specific performance of its obligation to improve the Frontage Road because construction had not yet commenced. On February 24, 2010, South Creek filed its voluntary petition for Chapter 7 bankruptcy. The petition listed the Village as a creditor for the sum of $450,000 (the estimated cost of the Frontage Road improvement). The petition also listed the Subject Property as an asset of South Creek. South Creek's petition listed Centrue Bank (Centrue) as a secured party with an equitable interest in the Subject Property, and parts of the Greater Property, as a mortgagee since 2005. Centrue's interests in land outside the Subject Property have since been released through third-party sales.

Before South Creek filed its bankruptcy petition, Centrue filed an action to foreclose on its interest in the Subject Property in Illinois state court. It obtained an order of possession on August 26, 2009, and on March 23, 2010, the bankruptcy court entered an order in which

Centrue agreed to stay its right to have the Subject Property sold at a foreclosure sale to provide the Trustee with an opportunity to sell the Subject Property on the open market. On April 7, 2010, the bankruptcy court granted the Trustee's petition to employ a real estate agent to sell the Subject Property. The Village then filed this motion to protect its interest in the Subject Property pursuant to 11 U.S.C. § 363(e) on April 12, 2010.

In the motion, the Village argued that the Subject Property, which is part of South Creek's estate, is also a part of the Greater Property and thus subject to the Original and Amended Annexation Agreements. The Village argued that the Trustee could only sell the debtor's (South Creek's) property free and clear of third-party (Village) interest if it met one of five exceptions under 11 U.S.C. § 363(f). The Village denied that any of the exceptions allowing sale of the land free and clear of the Village's interest applied. Centrue responded that the exceptions had been met. Centrue argued that a bona fide dispute existed as to whether the Amended Annexation Agreement at issue required Centrue, as mortgagee, to affirmatively build a road to certain specifications or, alternatively, to pay monetary damages in the amount of $450,000. Centrue argued that that issue was being litigated in the state courts and thus was in bona fide dispute.

The bankruptcy court issued its Order on May 18, 2010. In the Order, the court found that the Trustee was entitled to sell the property "free and clear of the obligations imposed under the Amended Annexation Agreement because there is a bona fide dispute regarding the validity of the Amended Annexation Agreement and, therefore, the obligations imposed thereunder." The court did not expand on its finding of a bona fide dispute, but did order that "any such sale shall be subject to court approval" and that the "Village is entitled to adequate protection in the

amount of $83,565.00."

ANALYSIS

The Village has appealed the Order of the bankruptcy court. In their appeal, the Village argues (1) the bankruptcy court erred in finding there was a bona fide dispute as to the validity of the Amended Annexation Agreement and the obligations imposed thereunder and, (2) if the court finds there was a bona fide dispute, the bankruptcy court erred in ruling that $83,565.00 constituted adequate protection of the Village's interest in the Subject Property.

Standard of Review

The parties are in disagreement as to the standard of review. The Village claims the standard of review is de novo because the bankruptcy court's decision was solely based on interpretation of applicable law, while Centrue maintains the standard is clear error, as the bankruptcy court made a fact-based, or at least a mixed question of law and fact, decision.

The Seventh Circuit has not set a standard of review for the determination of whether a bona fide dispute exists in a bankruptcy setting. Rezko v. Sirazi, 2009 WL 1507660, at *3, fn. 2, (N.D. Ill. May 29, 2009). This court agrees with the holding of the Northern District of Illinois in Rezko, and will tie the standard of review to the nature of the decision made by the lower court- factual decisions will be reviewed for clear error and legal decisions will be reviewed de novo. Rezko, 2009 WL 1507660, at *3.

Bona Fide Dispute

Under the Bankruptcy Code, a trustee may sell a debtor's property free and clear of any interest in such property of an entity other than the estate only if:

(1) applicable bankruptcy law permits sale of such property free and clear of such

4

interest;

(2) the entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate valued of all liens on such property;

(4) such interest is in bona fide dispute; and

(5) such entity could be compelled, in a legal or equitable proceeding, to accept money satisfaction of such interest. 11 U.S.C. § 363(f)(4).

The only exception at issue in this case is whether a bona fide dispute exists as to the validity of the Amended Annexation Agreement and the obligations imposed thereunder. As discussed by the parties, the Bankruptcy Code does not define bona fide dispute under § 364(f)(4). The Seventh Circuit has defined bona fide dispute, as it applies under 11 U.S.C. § 303, as where "the bankruptcy court must determine whether there is an objective basis for either a factual or legal dispute." In re Busick, 831 F.2d 745, 750 (7th Cir. 1987). In further addressing what constituted a bona fide dispute under § 303, the Ninth Circuit stated that "the mere existence of pending litigation or the filing of an answer is insufficient to establish the existence of a bona fide dispute." In re Vortex Fishing Systems, Inc., 277 F.3d 1057, 1066 (9th Cir. 2002). However, the existence of affirmative defenses may suggest that a bona fide dispute exists. Vortex, 277 F.3d at 1067; cf. Rezko, 2009 WL 1507660, at *3 (presence of affirmative defense itself may not constitute bona fide dispute). The court, however, is not required to resolve the underlying dispute as a condition to authorizing sale under this provision, but must determine that a dispute exists. In re Octagon Roofing, 123 B.R. 583, 590 (Bankr. N.D. Ill. 1991); see also In re Taylor, 198 B.R. 142, 162 (Bankr. D. S.C. 1996) ("This standard does not require that the

5

Court resolve the underlying dispute or determine the probable outcome of the dispute, but merely whether one exists."). Parties are held to an evidentiary standard, meaning that evidence must be provided to show factual grounds that there is an objective basis for the dispute. Taylor, 198 B.R. at 162. However, § 363(f)(4) is not satisfied by just any alleged dispute, rather "it clearly entails some sort of meritorious, existing conflict." Taylor, 198 B.R. at 162, citing In re Atlas Machine & Iron Works v. Bethlehem Steel, 986 F.2d 709 (4th Cir. 1993).

Centrue claims that the Subject Property is in bona fide dispute because the annexation agreements that imposed the obligation to develop the Frontage Road on the property are the subject of litigation at the state court level. In the Circuit Court of Kankakee County, the Village filed suit seeking specific performance, or in the alternative $450,000 for breach of contract, regarding the Amended Annexation Agreement's requirement that South Creek improve the Frontage Road adjacent to the Subject Property. The Village claimed it, at all times, performed its obligations under the agreement that were not dependent on action first by South Creek. The Village stated that it was ready to perform its contractual obligations to improve the portions of land by the Frontage Road for sale. First, however, South Creek must improve the Frontage Road, as the Village claimed it was obligated to do under the Amended Annexation Agreement.

Centrue then filed a motion to dismiss the Village's suit. Centrue listed eight bases for its motion to dismiss, which were: (1) agreed on zoning was the consideration for annexation of the property, and the Village lacked authority to extend incentives to property outside its borders; (2) if a road is required to be constructed as part of the consideration for the annexation agreement, the ordinance involved illegal contract zoning; (3) any contract in the case is unenforceable by specific performance; (4) any requirement that the developer or its successor

6

build a road would have occurred under the municipality's power to tax; (5) home rule power is limited such that a municipality is required to follow statutory guidelines regarding development financing, and the Village did not; (6) home rule power is limited such that a municipality is required to follow tax implementation procedures in the municipal code and the Village did not; (7) any requirement that the developer or its successor build a road is not in compliance with the special service area tax law; and (8) any requirement that a road be built is invalid in that there was no proper levy of a special assessment in compliance with the municipal code.

The Village's first argument is that "there is no bona fide dispute as to the validity of the original annexation agreement that could transform into a bona fide dispute of the amended annexation agreement because the statute of limitations bars Centrue's challenge." The Village notes that Centrue has had an equitable interest in the Subject Property since 2005, and not once has it voiced an issue with the annexation agreements or the obligations imposed thereunder since it became mortgagee. The Village maintains that Centrue's position cannot be maintained because the one-year statute of limitations applicable to an indirect contest of an annexation bars any direct challenge to an annexation agreement that formed the basis for that annexation.

The relevant statute reads:

> "Neither the People of the State of Illinois nor any person, firm or corporation, public or private, nor any association of persons shall commence an action contesting either directly or indirectly the annexation of any territory to a municipality unless initiated within one year after the date of such annexation becomes final..." 65 Ill. Comp. Stat. 5/7-1-46 (West 2008).

Centrue first argues that the motion to dismiss does not "commence an action" and thus

does not fall under the limitations statute. Centrue believes that to "commence an action" one must initiate litigation, such as through the filing of a complaint. However, the most recent example of Illinois case law on the matter, released after the bankruptcy court rendered its decision, disagrees with Centrue's position.

In <u>Village of Glendale Heights v. Glen Ayre Enterprises, Inc.</u>, ____ N.E.2d ____, 2010 WL 3450052 (Ill. App. Ct. 2010), the Illinois Appellate Court concluded that the one year statute of limitations on actions contesting the annexation of territory to a municipality applied to an owner's affirmative defense of invalid annexation. In that case, the plaintiff filed a complaint alleging that the defendant was the owner of a parcel of real estate that had been annexed into the village of Glendale Heights via an October 2000 ordinance and that defendant had violated the plaintiff's zoning ordinances, and thus sought injunctions restricting the use of the land. The defendant thereafter filed affirmative defenses, such as the defense that the annexation was void because it was not accomplished in compliance with governing statutes. The plaintiff responded that the defendants were seeking to overturn the annexation agreement after the one year statute of limitations. The trial court accepted the statute of limitations argument and the defendant appealed, arguing that the trial court erred in concluding that the statute of limitations barred defendant's affirmative defense contesting the validity of the annexation.

On appeal, the Illinois Appellate Court acknowledged the reasonableness of the argument that the "commence an action" language indicates the legislature's intent to limit the limitations period only to commencement of actions and not affirmative defenses. Nevertheless, the court wrote that "[t]he overall language of the statute, which bars actions 'either directly or indirectly' contesting an annexation more than a year after the annexation has been finalized [citation

omitted], indicates the legislature's 'obvious intent of shielding the zoning provisions of annexation agreements from attack after the passage of the one-year limitation period.'" Village of Glendale Heights, ____ N.E.2d___, 2010 WL 3450052, at *2, citing Langdorf v. City of Urbana, 754 N.E.2d 320, 325 (Ill. 2001). The court found that "to allow defendants to defend against plaintiff's assertion of zoning authority by arguing that the annexation was invalid would be to allow defendants to challenge the annexation agreement 'indirectly,' despite the legislature's intent to forestall such challenges." Village of Glendale Heights, ____ N.E.2d___, 2010 WL 3450052, at *2. The court concluded that "we interpret section 7-1-46 as applying to defendants' affirmative defenses challenging the validity of the annexation just as it would apply to a claim challenging the annexation." Village of Glendale Heights, ____ N.E.2d___, 2010 WL 3450052, at *2.

Here, Centrue's attack on the validity of the annexation agreement did not arise through an affirmative defense in an answer to a complaint, but rather in a motion to dismiss filed pursuant to § 2-619(a)(9) of the Illinois Code of Civil Procedure (735 Ill. Comp. Stat. 5/2-619(a)(9) (West 2008). Section 2-619(a)(9) refers to affirmative defenses that may be raised in support of a motion to dismiss:

> "That the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim."

Clearly, a 2-619(a)(9)-based motion to dismiss counts as an affirmative defense, and thus is subject to the one year statute of limitations on attacking the validity of an annexation agreement. Centrue, however, also argues that it is not attacking the validity of the annexation agreement, but rather is "[P]ursuant to the position advanced by Bank as to the construction of

9

the enactments, the verbiage relevant to the road will be read as a zoning restriction delineating specifications rather than as an affirmative obligation." Putting aside the confusing nature of Centrue's argument and "verbiage," the bankruptcy court itself, in finding that there was a bona fide dispute, wrote "[t]he court finds that the Trustee is entitled to sell the property at issue free and clear of the obligations imposed under the Amended Annexation Agreement because there is a bona fide dispute regarding the validity of the Amended Annexation Agreement and, therefore, the obligations imposed thereunder." Further, the motion to dismiss in state court attacks the validity of the annexation agreement and the obligations imposed thereunder on grounds such as inadequate consideration. Thus, as the statute of limitations bars an attack on the validity of the annexation agreement, there is no bona fide dispute. Therefore, this court remands the case to the bankruptcy court for a determination of whether any other exception in § 363(f) is met which would allow the Trustee to sell the subject property free and clear of the Village's interests running with the land.

Next, the court agrees with the Village's position that the requirements of 11 U.S.C. § 363(f) are mandatory, and since there is no bona fide dispute, and as of yet no other exception to § 363(f) has been met, the bankruptcy court's decision affixing protection of the Village's interest at $83,565 monetary value must similarly be reversed. As there has been no determination that the subject property may be sold free and clear of the obligations imposed under the Amended Annexation Agreement, the fixing of a monetary value for the Village's protected interest is premature.

IT IS THEREFORE ORDERED:

(1) The decision of the bankruptcy court is REVERSED in its entirety.

(2) The case is remanded back to the bankruptcy court for further proceedings in accordance with this order to determine if any other exception applies under 11 U.S.C. § 363(f).

ENTERED this 25th day of October, 2010.

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE